**WASHINGTON–BALTIMORE NEWSPAPER GUILD, LOCAL 35, Appellant,**

**v.**

**The WASHINGTON POST COMPANY.**

**Nos. 23398, 23980.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 2, 1970.

Decided Jan. 20, 1971.

---

8. 52 F.Supp. 40 (D.Ky.1943).

9. See the survey by Judge Chesnut in United States v. Certain Parcels of Land, 46 F.Supp. 441 (D.Md.1942).

Mr. Seymour J. Spelman, Washington, D. C., for appellant.

Mr. Stuart Rothman, Washington, D. C., for appellee.

Before BAZELON, Chief Judge, WILBUR K. MILLER,* Senior Circuit Judge, and WILKEY, Circuit Judge.

WILKEY, Circuit Judge:

These appeals are taken by the Guild on behalf of one of its members, Mrs. Winzola McLendon, from summary judgment of the District Court sustaining an arbitration award under procedures provided for by a labor contract between the Guild and the Post, and the denial by the District Court of the Guild's motion under Rule 60(b), Fed.R.Civ.P. to vacate the order granting summary judgment. The appellant Guild raises issues as to the scope of the arbitrator's authority, the refusal of the District Court to vacate the award because of

---

\* Senior Circuit Judge Wilbur K. Miller did not participate in the disposition of this case.

"newly available evidence," and in regard to the exclusion of allegedly "material" evidence by the arbitrator. Finding no error in the judgment of the District Court, we affirm.

### I. *Nature and Origin of the Dispute*

The Washington Post discharged Mrs. Winzola McLendon, one of its reporters, for submitting allegedly plagiarized material for publication in its 10 September 1967 issue. A grievance conference was held that same day, 19 October 1967, at which the Post representatives told the Guild that the reporter had been discharged for "plagiarism which we consider gross misconduct."

As the Guild informed its own members,

> The Guild demanded the employee's immediate reinstatement because the firing was precipitate and without grounds under the contract, which provides: "No employee shall be discharged except for good and sufficient cause."

On the following day, 20 October 1967, the Guild wrote the American Arbitration Association, demanding arbitration and stating its position:

> The alleged misconduct involved an unproved charge of plagiarism against Mrs. McLendon. The Guild maintains that the discharge was not for good and sufficient cause.

Pursuant to agreement, the Post wrote its discharged reporter, setting forth the grounds for its action, on 26 October 1967, stating:

> You were discharged on October 19, 1967, for gross misconduct, in that in the preparation of the article on Prospect House published in the Washington Post on September 10, 1967, you committed the act of plagiarism.

The arbitrator rendered his award on 12 April 1968, finding:

> The discharge of Mrs. Winzola McLendon was not for willful neglect of duty or gross misconduct, but it was for good and sufficient cause.

### II. *The Issue and the Scope of the Arbitrator's Authority*

The basic contention of the appellant is that the arbitrator went beyond the scope of his authority in rendering his award. Appellant contends that his authority ended when he found an absence of "gross misconduct" on Mrs. McLendon's part, and that he had no power to go further to hold that her conduct did, however, constitute "good and sufficient cause" for discharge. Accordingly, we are asked to vacate this latter determination, and order Mrs. McLendon's reinstatement with back pay and seniority rights unimpaired. The District Court refused to do so, and, for reasons that follow, we also conclude that this ground affords no relief to the appellant Guild.

 In determining the scope of an arbitrator's authority we look to two sources: the collective bargaining agreement, and the submission of the parties to the arbitrator.[1] Here the collective bargaining agreement specified in Article XVII:

> In a dispute arising from a discharge of an employee, the authority of the Arbitrator shall be that specified in Article VI of this Agreement.

Article VI, paragraph (3), reads:

> No employee shall be discharged *except for good and sufficient cause.* * * * Two weeks' notice in advance of discharge shall be given to employees with six (6) months or more of continuous employment *except in cases of discharge for willful ne-*

---

1. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) ; Lee v. Olin Mathieson Chemical Corp., 271 F.Supp. 635, 639 (D.W.D.Va. 1967). *See also* Textile Workers Union of America, AFL–CIO, Local Union No. 1386 v. American Thread Co., 291 F.2d 894 (4th Cir. 1961) ; Truck Drivers, etc., Union, Local 784 v. Ulry-Talbert Co., 330 F.2d 562 (8th Cir. 1964).

glect of duty or gross misconduct. * * * If the Arbitrator renders an award that the discharge was *not for good and sufficient cause,* The Post shall be obligated * * * [herein are alternative remedies including reinstatement of the discharged employee or indemnity payments]. * *

If the Arbitrator renders an award *holding only* that the discharge was *not for willful neglect of duty or gross misconduct,* The Post shall be obligated to pay the discharged employee any sums due him at the time *as severance pay* under Article X of this Agreement *and as payment in lieu of notice* under this Paragraph (3) of this Article VI. (Emphasis supplied.)

The clear language of this paragraph contains several alternative grants of power to the arbitrator. First, and basically, he is empowered to determine whether an employee was discharged "for good and sufficient cause." If he finds for the employee on this issue, he is empowered to order reinstatement of the employee or specific equivalent payments. If he finds for the company, then the employee remains discharged, but the employee is entitled to two weeks' notice (or payment in lieu thereof) and severance pay under Article X of the agreement. Second, on submission of the issue, the arbitrator undoubtedly is empowered to determine whether an employee was discharged "for willful neglect of duty or gross misconduct." If he finds for the company on this issue the employee loses any payment in lieu of notice and his severance pay under Article X.

If the arbitrator does not fully sustain the company's characterization of the employee's action precipitating the discharge as "willful neglect of duty or gross misconduct," then the arbitrator may either (a) find the discharged employee entirely innocent of the actions on which the charge of gross misconduct was predicated, i. e., a finding of an absence of "good and sufficient cause," and order reinstatement or the equivalent remedy; or, alternatively, (b) the arbitrator can hold *"only* that the discharge was not for willful neglect of duty or gross misconduct," i. e., that there was "good and sufficient cause" for the discharge, but that the employee's action precipitating the firing does not rise to the level of "gross misconduct." Carrying out this latter alternative, the employee is not reinstated, but is paid "sums due him at the time as severance pay under Article X of the Agreement. * * * " The first sentence of Article VI, paragraph (3), quoted above, makes it clear that whatever the "reason" for discharge, basically *such reason must constitute good and sufficient cause for discharge.*

■ As we made clear under the statement of the proceedings at the outset of this opinion, while the appellant Guild phrased the issue for the arbitrator in terms of "good and sufficient cause," the Post itself persisted in characterizing Mrs. McLendon's action as "gross misconduct." Whatever degree of culpability, the offense charged was plagiarism. Whether it rose to the level of "gross misconduct," thus causing a forfeiture of severance pay, or whether the offense could only be characterized as "good and sufficient cause" for the discharge, thus entitling Mrs. McLendon to severance pay and payment in lieu of notice, was a matter of characterization of the offense.[2]

We think the arbitrator made a clear and specific finding, within both the terms of the contract provision and the

2. Emphasizing Mrs. McLendon's years of service to the Post, the Guild argued extensively on brief that "at no point did the Company state that it would have discharged Mrs. McLendon even if her misconduct had not been 'gross.' On the contrary, it very plainly indicated that it was the grossness of the misconduct which triggered its discharge decision." This seems to us an argument more properly directed to the Post than this court. And by answering this appeal instead of reinstating Mrs. McLendon the Post has obviously rejected it.

terms of the issue as phrased by both parties:

> The discharge of Mrs. Winzola McLendon was not for willful neglect of duty or gross misconduct, but it was for good and sufficient cause.

The consequences which flow from this arbitrator's finding are those provided in Article VI, paragraph (3), and Article X.

### III. *The Denial by the District Court of Appellant's Motion to Have the Award Vacated on the Ground of "Newly Available Evidence"*

■ Appellant's motion in the District Court to have the order sustaining the arbitrator's award vacated and the cause remanded for a new arbitration hearing under Rule 60(b) (6) of the Federal Rules of Civil Procedure,[3] citing "newly available evidence," was denied. Specifically, the appellant Guild desires a new arbitration hearing so that the testimony of Mrs. Patricia Firestone Chatham, who refused to testify at the first proceeding but now claims to be willing may be received and considered by the arbitrator. It is alleged that her testimony illuminates the "central issue of the case" and "directly contradicts the finding of the arbitrator on that issue," hence might call for a different conclusion.

Because subpoenas are not available in private arbitration proceedings, appellant was unable to compel Mrs. Chatham's attendance and testimony. Nevertheless, it was the Guild's bargain with the Post to have disputes over the discharge of employees settled by arbitration, with all of its well known ad-

vantages and drawbacks.[4] To give appellant a rematch before the arbitrator, merely because a witness who refused to enter the original contest has now decided to participate, would be not only to give the Guild more than the benefit of its bargain in this case, but would undercut the finality and therefore the entire usefulness of arbitration as an expeditious and generally fair method of *settling* disputes. As District Judge Aubrey Robinson put it in this case:

> Unless parties are bound by the records made before the arbitrators, the piecemeal or staggered submission of evidence would be likely to erode the effectiveness of arbitration as a speedy and efficient forum for resolving labor disputes.

■ Furthermore, the mechanics of the arbitration process do not comport with the procedure espoused by the appellant. Arbitrators are not and never were intended to be amenable to the "remand" of a case for "retrial" in the same way as a trial judge. In La Vale Plaza, Inc. v. R. S. Noonan, Inc.,[5] Judge Freedman made the critical distinction:

> It is an equally fundamental common law principle that once an arbitrator has made and published a final award his authority is exhausted and he is functus officio and can do nothing more in regard to the subject matter of the arbitration. The policy which lies behind this is an unwillingness to permit one who is *not a judicial officer* and *who acts informally and sporadically,* to re-examine a final decision which he has already rendered, because of the potential evil of outside communication and unilateral influ-

---

3. Rule 60(b) reads, in pertinent part:

 (b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (6) any other reason justifying relief from the operation of the judgment. * * *

4. *See* Bridgeport Rolling Mills Co. v. Brown, 314 F.2d 885, 886 (2d Cir. 1963), where on a motion to vacate an arbitration award under Rule 60(b), Fed.R.Civ. P., the court said:

 We only hold that the parties, having agreed to an arbitration of their differences, are bound by the arbitration award *made upon the testimony before the arbitrator.* (Emphasis supplied.)

5. 378 F.2d 569 (3rd Cir. 1967).

ence which might affect a new conclusion. The *continuity* of judicial office and the *tradition* which surround judicial conduct is *lacking* in the isolated activity of an arbitrator, although even here the vast increase in the arbitration of labor disputes has created the office of the specialized professional arbitrator. (Emphasis supplied.) [6]

 These considerations demonstrate substantial cause for not applying Rule 60(b) remedies to final arbitration awards. Of course, neither Rule 60(b) *per se* nor, for that matter, any other of the Federal Rules of Civil Procedure was ever designed to apply to proceedings in other than the United States District Courts.[7]

In sum, we think that neither Rule 60(b) nor any judicially constructed parallel thereto was meant to be applied to final arbitration awards, and that the District Court was correct in denying appellant's motion.

IV. *Exclusion of "Material" Evidence at the Arbitration*

 Appellant complains that at the hearing the arbitrator prevented it from showing that the report allegedly plagiarized by Mrs. McLendon was itself copied from historical sources in the public domain. The arbitrator, and we think rightly so, ruled that "[i]t would not make any difference if [the author of the report] had lifted the whole report from the Britannica."

 But even if we felt that he had committed an error of law in excluding this line of proof, we would not vacate this award and order another arbitration. The better view is that an award will not be vacated even though the arbi-

trator may have made, in the eyes of judges, errors of fact and law unless it "compels the violation of law or conduct contrary to accepted public policy." [8] No such violation is compelled by this award.

The orders of the District Court are hereby

Affirmed.

---

6. *Id.*, at 572.

7. See Fed.R.Civ.P. Rule 1, which reads:
 *Scope of Rules*
 These rules govern the procedure *in the United States district courts* in all suits of a civil nature, whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81. They shall be construed to secure the just, speedy, and inexpensive determination in every action. (Emphasis supplied.)

8. Gulf States Telephone Company v. Local 1692, International Brotherhood of Electrical Workers, AFL–CIO, et al., 416 F.2d 198, 201 (5th Cir. 1969), and authorities there cited.