TEAMSTERS LOCAL UNION NO. 394,
Travis Johnson, Gene Glesner, and
Marion Koons, Appellees,

v.

ASSOCIATED GROCERS OF IOWA
COOPERATIVE, INC., Appellant.

No. 59937.

Supreme Court of Iowa.

March 22, 1978.

Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, for appellant.

Conley, Zohn & Needles, Des Moines, for appellees.

Considered by MOORE, C. J., and Le-GRAND, REYNOLDSON, HARRIS, and McCORMICK, JJ.

LeGRAND, Justice.

This appeal concerns a labor dispute arising out of a collective bargaining agreement between Teamsters Local Union No. 394 and Associated Grocers of Iowa Cooperative, Inc. It involves the claims of three employees, Travis Johnson, Gene Glesner, and Marion Koons, who are referred to herein as grievants. Defendant appeals from a decree which restored demoted grievants to their positions as truck drivers, awarded back pay, attorney fees, and other relief. We affirm the trial court except as to the allowance of attorney fees. On that issue we reverse.

Associated Grocers of Iowa Cooperative, Inc., hereafter called AGI, is a cooperative corporation engaged in the wholesale grocery business. Teamsters Local Union No. 394, hereafter called the union, entered into a collective bargaining agreement with AGI covering wages, hours of employment, and other work conditions for the employees of AGI. The grievants were employed by AGI as truck drivers and were members of the union.

Although stated somewhat differently in the briefs, this appeal raises three issues:

1. The right of AGI to remove the grievants from their truck driver status because of alleged uninsurability.
2. The right of the union to an award of attorney fees.
3. Whether the case should be remanded for determination of an additional arbitrable issue under the collective bargaining agreement.

The only factual dispute centers around the insurability of the three employees. All had poor driving records. Over a period of several years this created problems between AGI and its insurance carriers as well as between AGI and Ruan Leasing Company, which leased equipment to AGI.

In 1974, the Great American Insurance Company, insurer for AGI, requested that the three grievants be removed as drivers and assigned to warehouse jobs. This was done. The union and the grievants filed a grievance, claiming the demotions violated the collective bargaining agreement.

On February 5, 1975, Steven A. Carter, as arbitrator, made an award finding that AGI had violated the contract by transferring the grievants from driver status to warehousemen. He awarded each grievant $250.00 for loss of overtime and directed AGI to offer them a return to driver status within ten days from the award.

The arbitration award included these findings:

"Obviously the employer in this instance may not operate its motor vehicles with-

out having first obtained appropriate insurance coverage for its own protection as well as for the protection of others who may be injured by reason of the operation of such vehicles.

"This arbitrator cannot reasonably expect an employer to operate without such insurance. * * * A review of this arbitrator's notes does not, however, indicate that the employer in this instance has been denied insurance coverage for its motor vehicles because of the operation of such vehicles by the three grievants here concerned. * * * [I]t is devoid of any showing that such insurance coverage would be denied. Absent such a showing, this arbitrator must only assume that the Company's operations would not be placed in jeopardy were it to transfer the three grievants here concerned from warehouse status to driver status. The record is also devoid of any showing that insurance coverage would be more expensive if the three grievants returned from warehouse status to driver status.

\* \* \* \* \* \*

"The Company indicated that there had been no effort on behalf of the Company to comply with the collective bargaining agreement, Article 1 paragraph D and E with respect to any of the grievants and this last action taken by the Company transferring all three of the grievants to the warehouse status.

\* \* \* \* \* \*

"This arbitrator has examined the driving records of the three grievants as shown by the Company exhibits, the Union exhibits and the records of the State Department of Public Safety offered and admitted as exhibits.

"There is no question but what Travis Johnson did not have an admirable record during the decade of the 1960's. It is also clear that with respect to Koons and Glesner, there does not appear to have even been a possible major chargeable accident within the meaning of the contract and that the one possibility would have been with respect to Koons."

Although AGI paid each grievant the $250.00 as the award directed, it refused to restore them to their previous positions as truck drivers because its insurance carrier requested they be excluded from coverage under AGI's liability policy. However, AGI continued to employ the grievants as warehouse workers, except Marion Koons, who obtained employment elsewhere.

The union and the grievants filed a petition in district court, alleging AGI's refusal to comply with the arbitration award and asking the relief already referred to.

I. Before reaching the issues, we discuss briefly the nature of our review.

■ Under § 301(a) of the Labor Management Relations Act of 1947 (29 U.S.C. § 185), either state or federal courts may entertain suits for violation of a collective bargaining contract between an employer and a labor organization. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 506–513, 82 S.Ct. 519, 521–525, 7 L.Ed.2d 483, 486–90 (1962). In doing so, however, state courts must apply federal substantive law. *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 101, 82 S.Ct. 571, 575, 7 L.Ed.2d 593, 598 (1962).

■ The function of the courts is strictly limited to a determination of the arbitrator's authority and the existence of an arbitrable dispute. Ordinarily courts may not inquire into the merits of the decision itself.

In *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424, 1427 (1960), the United States Supreme Court said:

"The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."

In the *Enterprise* case we find this further statement:

"[A] plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. * * * [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." 363 U.S. at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429.

■ This does not mean an arbitrator may act capriciously or in disregard of the law; nor may he decide disputes not fairly within the meaning and intent of the collective bargaining agreement.

A helpful explanation of the court's limited review power is found in *Amalgamated Meat Cutters, Local 195 v. Cross Bros. Meat Packers, Inc.,* 518 F.2d 1113, 1121 (3d Cir. 1975), where the court said:

"As the union's own statement of the issue suggests, our scope of review is narrow in the extreme. We must affirm if the award 'can in any rational way be derived from the agreement,' and can only reverse if 'there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop.' "

Other cases dealing with this subject and generally supporting the view expressed are *Victor Elec. Wire and Cable Corp. v. IBEW Local 2014,* 411 F.Supp. 338, 340–41 (D.R.I. 1976), *aff'd without opinion,* 546 F.2d 413 (1st Cir. 1976); *Amerada Hess Corp. v. Local 22026, Federal Labor Union,* 385 F.Supp. 279, 284 (D.N.J.1974); *Great Scott Supermarkets, Inc. v. Local 337, International Brotherhood of Teamsters,* 363 F.Supp. 1351, 1353 (E.D.Mich.1973); *District 50, United Mine Workers v. Pittston Co.,* 210 F.Supp. 781, 784 (N.D.W.Va.1962).

This court applied the above principles in deciding *Local 721, United Packinghouse Workers v. Needham Packing Co.,* 260 Iowa 908, 151 N.W.2d 540 (1967), *cert. denied,* 389 U.S. 830, 88 S.Ct. 94, 19 L.Ed.2d 87 (1967). There we said:

"As we are not permitted to reexamine the merits of the arbitration decision, we will review the question of arbitrability on the basis of the findings and conclusions of the arbitrator." 260 Iowa at 919, 151 N.W.2d at 547.

We also quoted this with approval from *United Steel Workers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, 1407 (1960):

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. * * *

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware." 260 Iowa at 911, 151 N.W.2d at 542.

■ II. The parties agree an exception to this rule exists when enforcement of an arbitration award would violate public policy. In such cases the courts may weigh the importance of the public policy involved against the importance of giving finality to arbitration under the particular facts. This has been recognized by both federal and state courts. *See Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 143 U.S.App.D.C. 210, 442 F.2d 1234 (1971); *Gulf States Telephone Co. v. Local 1692, IBEW,* 416 F.2d 198, 201 (5th Cir. 1969); *Machinists Dist. 8 v. Campbell*

*Soup Co.,* 406 F.2d 1223 (7th Cir. 1969), *cert. denied* 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969); *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969); *Local 453, Electrical Workers v. Otis Elevator Co.,* 314 F.2d 25 (2d Cir. 1963), *cert. denied* 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963); *Black v. Cutter Laboratories,* 43 Cal.2d 788, 278 P.2d 905 (1955), *cert. dismissed,* 351 U.S. 292, 76 S.Ct. 824, 100 L.Ed. 1188 (1956); *Avco Corp. v. Preteska,* 22 Conn.Supp. 475, 174 A.2d 684 (1961); *Goodyear Tire & Rubber Co. v. Sanford,* 540 S.W.2d 478 (Tex.Civ.App.1976).

That is the very question we face here. AGI asserts it would violate the public policy of this state if it were compelled to put uninsurable drivers in charge of its equipment. Everyone agrees this is so, and so do we. It would not only subject AGI to unfair risk, but, more important, it would also jeopardize the rights of the public. The arbitrator and the trial court both expressly disavowed any intention to impose such a duty on AGI.

The trouble with AGI's argument is that the arbitrator found uninsurability had not been established. Under rules already discussed, that finding would ordinarily end our inquiry except for the additional circumstance involving public policy. We therefore consider the further findings of the district court on this issue.

■ Much of the evidence on insurability was produced for the first time in the district court appeal from the arbitration award, a procedure which usually would be improper. *See Washington-Baltimore Newspaper Guild v. Washington Post Co.,* 143 U.S.App.D.C. 210, 214, 442 F.2d 1234, 1238 (1971); *Bridgeport Rolling Mills Co. v. Brown,* 314 F.2d 885, 886 (2d Cir. 1963), *cert. denied,* 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963).

However, we think it was permissible to consider such evidence in the present case when many of the facts relied on in claiming enforcement of the award would be contrary to public policy became apparent *after* the award. *See Washington-Baltimore Newspaper Guild v. Washington Post*

*Co.,* 143 U.S.App.D.C. at 215, 442 F.2d at 1239.

The trial court held even this additional evidence was insufficient to establish the grievants were not insurable. There was evidence two companies had objected to their driving records and at least one had "requested" they be excluded from coverage. The trial court considered this insufficient to show insurance coverage could not be obtained elsewhere, the terms upon which it might have been obtained, or (as the collective bargaining agreement required) that the accidents in which grievants had been involved were chargeable to them. Undoubtedly this conclusion was partly due to the fact one of the men (Koons) secured employment elsewhere as a truck driver and experienced no trouble with insurance coverage.

■ AGI also argues the public policy question was not before the arbitrator, that it raises a new arbitrable issue, and that the matter should be remanded for further arbitration on that point. We believe the issue was in fact considered by the arbitrator and decided adversely to AGI. There is no reason to remand, even if such authority exists. *Galt v. Libbey-Owens-Ford Glass Co.,* 397 F.2d 439 (7th Cir. 1968), *cert. denied sub nom., F. H. Sparks Co. v. George Sollitt Constr. Co.,* 393 U.S. 925, 89 S.Ct. 258, 21 L.Ed.2d 262 (1968); *La Vale Plaza, Inc. v. R. S. Noonan, Inc.,* 378 F.2d 569, 572–73, 37 A.L.R.3d 189 (3d Cir. 1967); *Todd Shipyards Corp. v. Industrial Union of Marine and Shipbuilding Workers, Local 15,* 242 F.Supp. 606, 611 (D.N.J.1965), *aff'd,* 344 F.2d 107 (2d Cir. 1965). *But see Electronics Corp. of America v. Electrical Workers, Local 272,* 492 F.2d 1255 (1st Cir. 1974).

■ We find the trial court decree upholding the arbitration award should be affirmed in all respects except as to the allowance of attorney fees, which we now consider.

III. The trial court awarded the union $2,075.00 as attorney fees. Although there is no statutory authority for this under § 301(a) of the Labor Management Rela-

tions Act, several federal circuit courts have made fee allowances upon a showing that a party "without justification" has refused to obey an arbitration award. *International Association of Machinists and Aerospace Workers, District 776 v. Texas Steel Co.,* 538 F.2d 1116, 1121–22 (5th Cir. 1976); *Local 149, UAW v. American Brake Shoe Co.,* 298 F.2d 212, 216 (4th Cir. 1962), *cert. denied,* 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962).

However, other federal courts have adopted a somewhat different and stricter standard. In *General Drivers, Helpers and Truck Terminal Employees v. Sears, Roebuck & Co.,* 535 F.2d 1072, 1076 (8th Cir. 1976), the court stated fees should be allowed only if authorized by statute or upon a showing of bad faith. In *Electrical Workers v. Peerless Pressed Metal Corp.,* 489 F.2d 768, 769 (1st Cir. 1973), the court ordered fees allowed because of the employer's "intransigence" in resisting enforcement of the arbitration award.

We prefer the rule allowing fees (assuming the absence of statutory authority) only upon a showing of bad faith. The trial court used the "without justification" standard, although conceding the area of disagreement between AGI and the union was not "patently spurious." There is no evidence of bad faith in the record before us and accordingly fees should not have been allowed.

We affirm the decree except as to the award of attorney fees. On that issue we reverse the trial court.

AFFIRMED IN PART AND REVERSED IN PART.