REVERE COPPER AND BRASS
INCORPORATED, Appellant,

v.

OVERSEAS PRIVATE INVESTMENT
CORPORATION, Appellee.

No. 79–1159.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 25, 1979.

Decided Feb. 26, 1980.

Certiorari Denied June 2, 1980.  See
100 S.Ct. 2964.

William E. Hegarty, New York City, for appellant.

Michael B. Sheppard, with whom E. Donald Elliott, Washington, D. C., was on the brief, for appellee.

Before J. EDWARD LUMBARD,* U. S. Senior Circuit Judge for the Second Circuit, and TAMM and MIKVA, Circuit Judges.

Opinion Per Curiam.

PER CURIAM:

Appellant, Revere Copper and Brass Incorporated (Revere), seeks reversal of the district court's denial of Revere's motion to correct or vacate in part an arbitration award. The origin of the arbitration award in question is an insurance contract under which the appellee, Overseas Private Investment Corporation (OPIC), an agency of the United States, insured Revere against losses incurred by expropriation of Revere's investment in its wholly-owned subsidiary's aluminum mining and refinery complex in Jamaica. Section 10.01 of the contract provides that any disputes thereon "shall be settled by arbitration . . . [and] . . [t]he award rendered by the arbitrator shall be final and binding upon the parties . . . ."

Following a change in administration of the Jamaican government, Revere made claim upon OPIC for compensation, alleging that actions by the new government constituted an expropriation of Revere's property. When OPIC denied the claim, Revere submitted the dispute to arbitration. The arbitrators determined that there was expropriatory action but awarded Revere $1,131,144, instead of the $64,131,000 that Revere had claimed.

Revere then filed its motion in the district court, seeking to correct or vacate the portions of the arbitrators' award in which the amount of the award was determined. Judge Charles R. Richey concluded that "Revere's claims amount to no more than the contention that the arbitrators misconstrued the contract. . . . [which] 'is not open to judicial review.' *Bernhardt v. Polygraphic Co. of America, Inc.,* 350 U.S. 198, 203 n.4 [76 S.Ct. 273, 100 L.Ed. 199] (1956)." *Revere Copper & Brass, Inc. v. Overseas Private Investment Corp.,* No. 78-0296, Order at 2-3 (D.D.C. Dec. 8, 1978), *reprinted in* Joint Appendix (J.A.) at 447a, 448a-49a. Judge Richey rejected Revere's claim that the award must be set aside for public policy reasons because it violates the rule of *contra proferentem. Id.* at 3, *reprinted in* J.A. at 449a. *Contra proferentem* is "the rule of construction that ambiguities in insurance contracts are resolved favorably to the insured." *Continental Casualty Co. v. Beelar,* 132 U.S.App.D.C. 1, 2,

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

405 F.2d 377, 378 (1968). The rule developed in recognition that insurance policies are usually written by the insurer, and the insurer ought not be allowed to benefit from any ambiguities in the language which it chose. 13 J. Appleman, Insurance Law & Practice § 7401 (rev. ed. 1976). After questioning whether any ambiguity in the Revere-OPIC insurance contract had been shown, Judge Richey declared that "[p]ublic policy is involved in this case, but not in the manner the petitioner [Revere] contends. There is a strong public policy behind judicial enforcement of binding arbitration clauses." Order at 3, *reprinted in* J.A. at 449a. From this ruling Revere appeals. We affirm.

■ Revere's motion in the district court was made pursuant to sections 10 and 11 of the Federal Arbitration Act, 9 U.S.C. §§ 10–11 (1976). The Act was originally passed in 1925. Pub.L. No. 68–401, 43 Stat. 883. As stated in the Act's preamble, Congress intended it to be "An Act To make valid and enforceable written provisions or agreements for arbitration of disputes arising out of contracts, maritime transactions, or commerce among the States or Territories or with foreign nations." *Id.* In the ensuing years, "[t]he federal courts have recognized a strong federal policy in favor of voluntary commercial arbitration, as embodied in the [Act] . . . ." *Hanes Corp. v. Millard*, 174 U.S.App.D.C. 253, 265, 531 F.2d 585, 597 (1976). The goal of Congress in passing the Act was to establish an alternative to the complications of litigation. *See Wilko v. Swan*, 346 U.S. 427, 431, 74 S.Ct. 182, 184, 98 L.Ed. 168 (1953) (citing House and Senate reports). As a result, judicial review of an arbitration award has been narrowly limited. *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805, 808 (2d Cir.), *cert. denied*, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960). This court has acknowledged its restricted function in that capacity. *See Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 143 U.S.App.D.C. 210, 215, 442 F.2d 1234, 1239 (1971).

■ Seeking to avoid the restrictions upon our review of the award in question, Revere points to the rule that enforcement of arbitration awards is subject to public policy considerations. Revere misperceives the nature of the public policy exception to the enforcement of arbitration awards. It is not available for every party who manages to find some generally accepted principle which is transgressed by the award. Rather, the award must be so misconceived that it "compels the violation of law or conduct contrary to accepted public policy." *Union Employers Division of Printing Industry, Inc. v. Columbia Typographical Union No. 101*, 353 F.Supp. 1348, 1349 (D.D.C. 1973), *aff'd mem.*, 160 U.S.App.D.C. 403, 492 F.2d 669 (1974).[1] A proper description of the limits of the public policy exception is provided in *Interinsurance Exchange of Automobile Club v. Bailes*, 219 Cal.App.2d 830, 33 Cal.Rptr. 533, 538 (1963):

> While, in one sense, all rules of adjective and substantive law set forth the "public policy" of the state, there is a vast difference between the enforcement of a void contract and the mere misunderstanding or misapplication of rules of law involved in the application to a particular dispute of a [valid] contract . . . . .

There being no question as to the validity of the insurance contract between Revere and OPIC, or the legitimacy of the parties' bargained-for performances, the public policy exception is inapplicable here.[2]

---

**1.** We do not agree with Revere's contention that the formulation of the role of public policy in the judicial review of arbitration awards set forth in the *Union Employers* case is limited to the labor context. A looser standard in other settings would upset the basic goal sought by Congress in enacting the Federal Arbitration Act. Allowing undue challenges to arbitration awards would defeat the finality and speedy dispute resolution expected of the arbitration procedure. *Cf. Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 143 U.S.App.D.C. 210, 214, 442 F.2d 1234, 1238 (1971).

**2.** Since the award here is not erroneous on its face, Revere's citation of *Campbell v. Farmers Insurance Exchange*, 260 Cal.App.2d 105, 67 Cal.Rptr. 175 (1968), is inapposite.

█ Revere argues that arbitration clauses are entitled to varying degrees of enforcement depending upon the subject matter of the contract in question. The Federal Arbitration Act provides no basis for this view. Section 9 of the Act expressly provides for the confirmation of arbitration awards which arise out of the kind of binding arbitration clause which is present in Revere's contract with OPIC. *See* 9 U.S.C. § 9 (1976). If indeed there are particular considerations that lead parties to different types of contracts to favor or disfavor arbitration, that is for the parties to determine when they decide whether to include an arbitration clause in their contract. It has nothing to do with the judicial enforcement of arbitration clauses pursuant to the Federal Arbitration Act. The strong federal policy in favor of voluntary commercial arbitration would be undermined if the courts had the final say on the merits of the award. *See* Note, *Judicial Review of Arbitration Awards on the Merits*, 63 Harv. L.Rev. 681 (1950).

█ If Congress wanted to exempt insurance contracts from the purview of the Federal Arbitration Act in the manner suggested by Revere, Congress could do so. In fact, the cases cited by Revere to demonstrate that arbitration of disputes between customer and broker is disfavored, *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953) and *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174 (2d Cir. 1977), stand for the proposition that Congress can abrogate an arbitration procedure previously contracted for. Congress has done no such thing in the insurance area. On the contrary, in the Foreign Assistance Act of 1969, Congress expressly sanctioned the use of arbitration in OPIC's insurance and guaranty programs. *See* 22 U.S.C. § 2197(i) (1976). As Judge Fuchsberg cogently stated in a case relied upon by Revere, "The notion that courts may freely assume the role of arbiters of public policy is a very much exaggerated one.

Most especially, they should avoid doing so in the face of a statutory scheme which bespeaks its own policy considerations . . . ." *Susquehanna Valley Central School Dist. v. Susquehanna Valley Teachers' Ass'n*, 37 N.Y.2d 614, 376 N.Y.S.2d 427, 430, 339 N.E.2d 132, 134 (1975) (concurring opinion).

█ We see no reason for holding that the failure of arbitrators to apply the rule of *contra proferentem* is sufficient cause for upsetting the award. In *Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp.*, 274 F.2d 805 (2d Cir. 1960), the court was faced with a challenge to "arbitrators' reliance upon the principle that ambiguous language is to be construed against the author." *Id.* at 808. The court resolved the issue in declaring that "the misapplication . . . of such rules of contract interpretation does not rise to the stature of a 'manifest disregard' of law." *Id.*

Our disposition makes it clear that we do not find credence in Revere's claim that it was compelled to accept the arbitration provision in its contract with OPIC. This allegation appears to have surfaced after the arbitration award was announced.[3] Revere is willing, on the other hand, to let stand the arbitrators' majority decision in Revere's favor that the Jamaican government expropriated Revere's property. Such an after-the-fact, pick-and-choose approach to an arbitration award is hardly consonant with the underlying concept of arbitration or with Revere's claim that it was forced to agree to arbitration in the first place.

As for Revere's argument that the arbitrators "rewrote" the contract in excess of their authority, a cursory reading of the arbitration award indicates that it "draws its essence" from the Revere-OPIC contract. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).

**3.** Revere was the party that requested arbitration of the dispute. Revere's displeasure with the results is understandable, but the very purpose of the Federal Arbitration Act—to offer parties a mutually agreeable alternative to lengthy and costly litigation—would be defeated if this court upset the arbitrators' decision.

We are satisfied that the arbitration award should be sustained. The judgment of the district court, therefore, is

*Affirmed.*