· Abraham M. SINDLER, Appellant,

v.

Joseph S. BATLEMAN, et ux., Appellees.

Joseph S. BATLEMAN, et ux., Appellants,

v.

Abraham M. SINDLER, Appellee.

Nos. 79–75, 79–135.

District of Columbia Court of Appeals.

Argued Feb. 7, 1980.

Decided June 3, 1980.

William J. Fitzgerald, Washington, D. C., for appellant in No. 79–75 and appellee in No. 79–135.

Steven M. Pavsner, Washington, D. C., for appellees in No. 79–75 and appellants in No. 79–135.

Before GALLAGHER, HARRIS and PRYOR, Associate Judges.

PRYOR, Associate Judge:

This litigation arose out of a dispute between joint owners of certain real property utilized for rental purposes. At issue is whether an arbitrator exceeded his authority in making an Award. Finding the arbitrator's Award was within the scope of his authority, we conclude that the trial judge did not err in denying the motion to vacate the Award.[1] We, therefore, affirm.

In June 1965, Abraham Sindler and Joseph Batleman entered into a Joint Venture Agreement, as tenants in common of property owned in the District of Columbia (herein referred to as High View Agreement), to build thereon a thirty-six unit apartment building, and to thereafter maintain and operate the same. The Agreement provided in pertinent part, that each would share equally the profits and losses, management and control of the project, and that no decisions with respect to the property could be made without the consent of both Sindler and Batleman, as trustees of the property. Clause 16 of the Agreement provided:

> ARBITRATION: Except as otherwise provided, any controversy or claim arising out of or resulting from this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules and regulations of the American Arbitration Association, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

In November 1965, Sindler and Batleman entered into a second Joint Venture Agreement, as tenants in common of another lot located in the District of Columbia (herein referred to as Iowa Agreement), to build a three-unit apartment building on said property. This Agreement was substantially identical to the High View Agreement. Clause 16 of Agreement, "ARBITRATION," is identical to the above-quoted language.

Batleman alleges that yet another Joint Venture Agreement was entered into with Sindler in August 1967 (herein referred to as First Street Agreement). This Agreement was not produced at arbitration or trial. Sindler denies the existence of such an Agreement.

Sometime after the above Agreements were entered into, Sindler absented himself from the area, leaving Batleman with no forwarding address and no direct means of contacting him. Sindler did avail himself to Batleman through an agent located in the District of Columbia. Thereafter, Batleman assumed the role of managing partner and began performing all managerial and administrative tasks incident to efficient operation of the apartment complexes. This role was assumed by Batleman without the consent of Sindler. It is the contention of Batleman that he did, however, apprise Sindler's agent of all actions taken relative to the properties, and regularly sent him an accounting of all monies received and spent. As managing partner, Batleman retained the services of Jerome Friedlander, Capital City Realty, Inc., to serve as rental agent for the properties owned jointly by the parties. Capital City collected the rents from the properties as per instructions, and held

---

1. Batleman raises an issue of the timeliness of Sindler's Motion to Vacate the Arbitration Award. It is his position that the motion, filed three months after the arbitrator's amended Award, was not timely filed. We find no authority to support this claim, nor do we find any basis for invoking the estoppel doctrine.

a portion of the same in a reserve fund for the maintenance and operation of the apartment buildings.

For three and one-half years, Capital City Realty collected and retained security deposits of the tenants, and a portion of the rents representing estimated operating costs. On December 6, 1974, without first discussing the matter with Batleman, and having had no direct communication with Batleman since his disappearance, Sindler, through his attorney, sent a letter to Capital City Realty demanding that it disburse all rental income which it had acquired from the property owned jointly by Batleman and Sindler. The rental agent did not disburse the money, but rather, sent a copy of the letter to Batleman who responded by instructing the rental agent to "maintain the status quo" until Sindler and Batleman could reach agreement on the amount of money to disburse, and the amount to keep in reserve for maintenance and management of the properties.

Unable to reach agreement, pursuant to Clause 16 of the Agreements, set out, *supra*, Batleman demanded arbitration. The following matters were submitted by the parties to be the subject of arbitration:

NATURE OF DISPUTE:

Validity and reasonableness of a contingency reserve set up for repairs of the properties and replacement of equipment and the setting aside of a reasonable amount of operating capital, both as to past and future amounts; authority of agent Capital City Realty, Inc. to continue handling the properties; the disposition of past and future security deposits; affirm authority of Joseph Batleman to act as managing partner since he is available in this area and the amount of compensation for past and future managerial activities to be allowed; award of costs of this arbitration, expenses and counsel fees for filing this Arbitration and handling law suit filed by Mr. Sindler since claimants are acting as trustees for the Joint-Ventures Partnerships. (Attached Addendum incorporated herein by reference.)

ADDENDUM

Messrs. Joseph L. Batleman and Abraham Sindler are Trustees under the following Joint Ventures, all of which contain identical arbitration clauses, to wit:

2352, 2356 & 2360 High Street, S.E., Washington, D.C., hereinafter referred to as the High View Joint Venture Agreement dated 24 June 1965

4701 Iowa Avenue, N.W., Washington, D.C., hereinafter referred to as the Iowa Joint Venture Agreement dated 8 November 1965

5509 First Street, N.W., Washington, D.C., dated August 1967

Copies of Agreements as to High Street and Iowa Avenue attached hereto and incorporated herein by reference.

Joseph L. Batleman and his wife, Barbara R. Batleman, own a one-half interest, as tenants by the entirety, in each of the joint ventures, and Abraham Sindler and his wife, Marilyn Sindler, own a one-half interest as tenants by the entirety in the other half. However, the entire property owned by these parties is owned as tenants in common as between themselves. Messrs. Batleman and Sindler acting as Trustees for each of the joint ventures.

Substantial disagreements between the partners have arisen necessitating this arbitration. In addition to claims set forth in the Nature of the Dispute and Claim for Relief Sought above, these differences include, but are not limited to Mr. Sindler's leaving the area, refusing to reveal his whereabouts, until he filed suit against the Rental Agent for the properties on January 14, 1975, which lists his address as 9056 Carlyle Avenue, Surfside, Florida, failing to cooperate in decisions necessarily to be made by the Trustees for the profitable operation of the properties, insisting that any actions be done through an intermediary, which makes the completion of essential activities in a prompt, businesslike manner extremely difficult and at times impossible.

Both parties appeared before an arbitrator and were represented by counsel. Each of the above issues was raised. Having heard the allegations of the parties, the arbitrator, on December 1, 1975, issued an Award providing, in sum, that the High View and Iowa Joint Venture Agreements were valid and binding; that though no written document was ever produced evidencing the same, the property owned by the parties at First Street was subject to the terms of the arbitration proceedings; that Batleman was to continue acting as managing partner and receive compensation for his services; that a repair and contingency reserve fund should be established; that all security deposits received from tenants should be retained in escrow as required by D.C.Law, and not considered "available money"; and that costs should be assessed against Sindler.

## II

While arbitration was pending, Sindler brought suit against Capital City Realty, Inc., its president, Jerome Friedlander, and Fidelity and Deposit Company of Maryland,[2] alleging that they withheld income which was collected on properties located in the District of Columbia in which appellant has a one-half interest. Friedlander, in turn, asserted that the money was withheld pursuant to instruction of the co-owner of the property, Joseph Batleman. Joseph Batleman and his wife, Barbara, were granted leave to intervene to protect their interest in the properties, and to proceed with the arbitration claim against Sindler discussed *supra*. As the result of the arbitration Award, "the defendants" and Batleman moved for summary judgment in the case pending in court, asserting that the arbitration Award settled all issues before the

court. Sindler opposed the motion and moved to vacate the arbitrator's Award. Following oral argument on the motions, Batleman's motion with respect to certain of the properties was granted, denied as to another.[3] "The defendants'" motion for summary judgment was likewise granted as to certain properties, limited, however, to any claim based on their conduct after the day the arbitration proceedings were commenced.[4]

Sindler filed Notice of Appeal from the grants of summary judgment and Batleman cross-appealed. Sindler subsequently filed a praecipe abandoning his claim against "the defendants" for alleged misconduct from February 1973 to December 1974. The trial judge signed an order dismissing that portion of the claim, *nunc pro tunc*, effective from June 16, 1976, the day on which Sindler's motion for summary judgment was granted relative to other alleged misconduct.

On March 22, 1977, this court granted Batleman's motion to dismiss Sindler's appeal on the ground that Batleman's counterclaim for punitive damages had not been fully adjudicated in the trial court, and therefore, there was no final appealable order. Batleman's cross-appeal was dismissed on June 1, 1977, for the same reason.

Following a nonjury trial on January 5th and 6th, 1978, Batleman's counterclaim for punitive damages was dismissed and the case remanded to the arbitrator for further proceedings.

On August 3, 1978, the arbitrator issued an amended Award which complied with the court's order. Sindler filed a motion to vacate the arbitrator's amended Award. This motion was denied on December 20,

2. Collectively, Friedlander, Capital City Realty, Inc., and Fidelity will be referred to as "the defendants."

3. Batleman's motion for summary judgment was granted with respect to the High View and Iowa property, denied as to the First Street property. The court found that the arbitrator erred in concluding that the First Street property was subject to the arbitration clause, because no Joint Venture Agreement was produc-

ed regarding First Street, nor were the contents of such an Agreement established. Thus, the court found that Batleman had failed to meet his burden under Super.Ct.Civ.R. 70–1.

4. "The defendants'" motion for summary judgment was also granted as to the High View and Iowa properties, denied as to First Street, for the reasons set forth in footnote 3 above.

1978, without a hearing or oral argument. From that order, Sindler appeals. Batleman cross-appeals.

## III

█ Judicial review of arbitration awards is limited. An Award should not be vacated by the court as long as it was within the arbitrator's authority to determine the issue(s). *See Marceron v. Chevy Chase Services, Inc.*, 103 U.S.App.D.C. 303, 258 F.2d 155 (1958). Thus, the pivotal question becomes what is the scope of authority of an arbitrator. This question has been answered by the courts in at least two ways. Some courts have held that the arbitrator is confined to interpretation and application of the collective bargaining agreement only, while others have held that in determining the arbitrator's authority we look to the collective bargaining agreement *and* the submission of the parties to the arbitrator. We are convinced that under the circumstances of this case, an application of the "agreement and submission" test is appropriate.

In commercial disputes which are covered by Section 301(a) of the National Labor Management Relations Act, 29 U.S.C. § 185(a) (1976), many courts have adopted the rule pronounced by the Supreme Court in the landmark *"Trilogy"* cases [5] that "an arbitrator is confined to interpretation and application of the collective bargaining agreement . . . . [H]is award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). We think this a sound rule when applied to grievances arising out of or relating to contracts between an employer and employee in an industry covered by the National Labor Management Relations Act. In those cases, the essence of the contractual relationship between the employer and employee is the collective bargaining agreement. Labor unions representing the employees, and representatives from management reach agreement on wages, hours, benefits and the like, and consolidate their assent into a collective bargaining agreement. Once agreement is reached, it is presumed that labor and management have reduced all potentially "arbitrable" issues to writing. The collective bargaining agreement thus becomes the arbitration agreement.[6]

█ We think the "agreement only" test a valid test when applied in a commercial setting and indeed have used that test in recent years;[7] however, we have before us facts which are not akin to those in the *"Trilogy"* cases and their progeny. In this instance, we are not dealing with a collective bargaining agreement, but rather, a joint venture agreement. The agreement was entered into by persons who, when on amicable terms, agreed to be co-equal partners in a business venture for joint profit, much unlike collective bargaining agreement negotiations where it is presumed at the time of negotiation, that many of the interests of management will be contrary to those of labor. Nor is this a situation in which labor unions and management drafted a highly technical, all-inclusive agreement. Rather, we have included in a joint venture agreement by co-equals, a very broad and general arbitration agreement which was to substitute for litigation in the

---

**5.** *United Steelworkers of America v. Am. Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

**6.** *See Northwest Airlines, Inc. v. Air Line Pilots Ass'n Int'l*, 174 U.S.App.D.C. 196, 530 F.2d 1048 (1976), where the United States Court of Appeals for the District of Columbia Circuit used the "agreement only" test in a labor dispute between Northwest Airlines and a pilot association. *See also Textile Workers Union of America, CIO v. Firestone Plastics Div., Firestone Tire and Rubber Co.*, 6 N.J.Super. 235, 237, 70 A.2d 880, 882 (1950), where the court stated that it is not within the power of an arbitrator or court to rewrite the agreement.

**7.** *See Ballard & Assoc., Inc. v. Mangum*, D.C. App., 368 A.2d 548 (1977).

event that the parties were later unable to reach agreement on any dispute arising as the result of their joint venture. By the clear language of the arbitration clause, the parties intended that, "any controversy or claim" arising out of or resulting from the joint venture agreement should be resolved by arbitration. This broad language encompasses venture-generated or venture-related disputes between the parties, however labeled. It is immaterial whether the basis for the claim is in the language of the joint-venture agreement or the relationship itself. Thus, where, as here, a dispute arose out of the joint-venture agreement, and the parties went to arbitration, the submission of the parties (or the party requesting arbitration) should be looked to, along with the joint venture agreement, to determine the scope of the arbitrator's authority.

This is not the first instance in which this jurisdiction has applied the "agreement and submission" test. In *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Company*, 143 U.S.App.D.C. 210, 442 F.2d 1234 (1971), this test was used. In the *Post* case, *supra*, there was a dispute between a reporter, who was discharged from employment at the Post for alleged plagiarism, and the managing officials. At issue was the interpretation of the clause in the collective bargaining agreement providing the grounds for which employees could be discharged from employment. Represented by her union (the Guild), the disgruntled terminee went to arbitration. Arbitration resulted in an Award supportive of the actions of the Post. The union appealed asserting, *inter alia*, that the arbitrator had exceeded the scope of his authority. The court said:

> In determining the scope of an arbitrator's authority we look to two sources; the collective bargaining agreement, *and* the submission of the parties to the arbitrator. *Id.*, 442 F.2d at 1235. [Footnote omitted. Emphasis added.]

While the facts in the *Post* case are clearly distinguishable from those in the instant case, and are in many ways more analogous to the facts in *"Trilogy"* type cases than those before us,[8] we find the "agreement and submission" test therein contained to be well-adaptive to situations such as the instant one, where two noncommercial parties include a broad arbitration clause in their joint venture agreement, selecting arbitration as the means of settling any ensuing dispute arising out of the joint venture relationship, rather than litigation which foreseeably would be more time consuming and costly.

█ Our adoption of the "agreement and submission" test is consonant with the case law which dictates that where there is ambiguity as to whether a matter is within the scope of the arbitrator's authority, the question is to be resolved in favor of arbitration. The "agreement and submission" test allows the arbitrator and the reviewing court to look to the four corners of the agreement for the arbitrator's authority. If authority is not clear on the face of that instrument, this does not necessitate a finding of non-arbitrability. The submission of the parties to the arbitrator may also be examined. If authority is found in either document, the Award must stand.

## IV

In reviewing the arbitration Award, the trial court applied the "agreement only" test of *Marceron v. Chevy Chase Services, Inc.*, *supra*, and found that by the broad language contained in the High View and Iowa Agreements, the parties intended to bestow "wide authority and discretion" on the arbitrator, to decide "any controversy or claim arising out of or resulting from the agreement or breach thereof." The court, therefore, concluded that the arbitrator act-

8. There is reason to believe that the court in the *Post* case interpreted *Trilogy* and progeny as requiring that the "agreement and submission" test be used in determining the scope of the arbitrator's authority. As authority for the above-quoted test, the court cited *United Steel-* *workers of America v. Enterprise Wheel and Car Corp.*, *supra*, and *Lee v. Olin Mathieson Chemical Corp.*, 271 F.Supp. 635, 639 (D.W.D. Va.1967) which relied on the *Enterprise Wheel*, case, *supra*.

ed within his authority in deciding the issues it did with respect to the High Street and Iowa properties, and granted Batleman's motion for summary judgment as to those properties. With respect to the First Street property, the court denied Batleman's motion for summary judgment. As grounds for so doing, the court stated that no "First Street Agreement" was ever produced. Additionally, the court found:

[T]hat the plaintiff [Sindler] denied both in his pleadings and in his testimony, that there was any such agreement and that the Intervenors [Batlemans] indicated that they "thought" there was a joint venture agreement but they did not set forth terms of such an agreement. Moreover, it is significant that the Intervenors only testified in vague language concerning a joint venture agreement, but the court has found no testimony at all concerning whether the agreement even contained an arbitration clause. Furthermore, even if the Intervenors had established that there was a joint venture agreement and that the joint venture agreement contained an arbitration clause, it was also incumbent upon them to establish the powers or authority created under the arbitration clause.[9]

While the trial court applied the "agreement only" test in reaching its decision to uphold the Award with respect to the Iowa and High View properties, and vacate the Award as to First Street, we affirm the trial court's holding, for in this case, we reach the same result by application of the "agreement and submission" test.

■ Sindler concedes that the issue of the creation of the contingency reserve fund was properly before the arbitrator. In our view, it was also necessary for the arbitrator to decide how much money the fund should contain, who should manage it, whether the manager should be compensated and if so, what was a reasonable amount of compensation. Thus, we find no error with the arbitrator deciding those issues.

9. *Sindler v. Friedlander, Capital City Realty, Inc., and Fidelity & Deposit Company of Maryland, and Batleman, Intervenors,* No. 300–75

The remaining issues of whether Batleman could continue to act as managing partner and receive compensation, as well as whether costs should be allowed for the prevailing party, are issues clearly set out in the statement of issues submitted to the arbitrator. They are all issues arising as the result of the joint venture agreement and necessarily arbitrable.

■ We agree with the trial court, however, that in deciding the above issues with respect to First Street, the arbitrator exceeded his authority. No agreement was ever produced, with respect to First Street, and a fair reading of the submission of the parties to the arbitrator does not indicate an intent of the parties to make the Award binding on the First Street property.

We find no error in the trial court's ruling. Therefore, we affirm.

*Affirmed.*

(June 16, 1976, Superior Court Memorandum Order at 6).