# Illinois Official Reports

## Appellate Court

*City of Chicago v. Chicago Loop Parking LLC*, 2014 IL App (1st) 133020

| | |
|---|---|
| Appellate Court Caption | THE CITY OF CHICAGO, a Municipal Corporation, Petitioner-Appellant, v. CHICAGO LOOP PARKING LLC, Respondent-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-3020 |
| Filed | November 26, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the City of Chicago entered into a lease giving respondent the right to operate four garages in a certain area, the right to compensation if the city allowed any new public parking facility to open in the vicinity of the leased garages and an agreement to arbitrate disputes, the city conceded that it had no grounds to vacate or modify the final and binding arbitration award of $58 million in damages to respondent based on the city's approval of a new public parking garage near the garages respondent leased, and when the city filed a "Verified Petition to Enter Judgment on Arbitration Award, To Stay The Judgment, And To Modify The Judgment" pursuant to sections 9 and 13 of the Federal Arbitration Act and sections 2-1203, 2-1305 and 2-1401 of the Code of Civil Procedure, the trial court properly dismissed the city's petition and entered a judgment confirming the arbitration award, since no claim for relief from the valid arbitration award was stated by the city under the Act or the Illinois postjudgment statutes. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-13381; the Hon. Sophia H. Hall, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Martha M. Pacold and Reid M. Bolton, both of Bartlit Beck Herman Palenchar & Scott LLP, and Stephen R. Patton, Corporation Counsel (Benna Ruth Solomon and Myriam Zreczny Kasper, Assistant Corporation Counsel, of counsel), both of Chicago, for appellant.

David A. Gordon, Melanie E. Walker, Kendra L. Stead, and Lawrence P. Fogel, all of Sidley Austin LLP, of Chicago, for appellee.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1        This case involves two sophisticated parties that willingly chose arbitration as their preferred method of resolving their disputes, thereby restricting the reach of the courts. Now, unhappy with the result of that choice–a final and binding arbitration award it wishes to avoid–one of the parties turns to the court for relief. This court finds, as did the trial court, that it has no authority to overturn the valid arbitration award.

¶ 2        A brief chronology of events follows. In November 2006, appellant City of Chicago (the City) and appellee Chicago Loop Parking LLC, now known as LMG2, LLC (CLP), entered into an agreement whereby CLP paid the City $563 million in exchange for the City granting CLP a 99-year lease and concession to operate the four underground garages in Grant and Millennium Parks (the Concession and Lease Agreement). Unfortunately for the City–and the taxpayers of Chicago–the City would not realize the full benefit of that bargain due to subsequent events, which only can be characterized as a series of mistakes and unsuccessful strategic choices made by the City.

¶ 3        A dispute arose in 2009 that the parties were not able to resolve. The City eventually conceded liability but disputed the amount of damages it owed CLP. In 2011, as they had previously agreed in the Concession and Lease Agreement, the parties proceeded to binding arbitration for a determination of damages. In 2013, after an eight-day evidentiary hearing, the three-member arbitration panel issued its final and binding award (the Arbitration Award). Thus, the City found itself owing CLP nearly $58 million in damages as the result of the Arbitration Award, and the City conceded there were no grounds on which to vacate or modify the award. That did not stop the City from trying (belatedly) to mitigate the damages.

¶ 4        Five months after the Arbitration Award was entered, the City filed a "Verified Petition to Enter Judgment on Arbitration Award, To Stay The Judgment, And To Modify The Judgment" in the circuit court (the City's petition). CLP filed its own motion to confirm the Arbitration Award and also filed a motion to dismiss the City's petition pursuant to section 2-619.1 of the Illinois Code of Civil Procedure. 735 ILCS 5/2-619.1 (West 2012). There was no dispute that the Arbitration Award was final and binding and that no grounds existed under the Federal

- 2 -

Arbitration Act (9 U.S.C. § 1 *et seq*. (2000)) (FAA) for vacating or modifying the award. There was no dispute that the circuit court had the authority, and was in fact required, to confirm and enter judgment on the Arbitration Award pursuant to section 9 of the FAA. 9 U.S.C. § 9 (2000). The City, however, sought to vacate or modify the judgment based on a contingent contract that the City entered into with a third party after the arbitration, which the City asserted would eliminate CLP's future damages. After full briefing and hearing argument from the parties, the circuit court confirmed the Arbitration Award but refused to vacate or modify its judgment and dismissed the City's petition. The City filed the instant appeal. As will be explained below, there is no legal or equitable remedy available to the City to undo the Arbitration Award–the award it bargained for–even where taxpayer funds are involved. There are no grounds for vacating or modifying the court judgment confirming the Arbitration Award. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 5                                    BACKGROUND
¶ 6                          The Parties' Arbitration Agreement
¶ 7      The Concession and Lease Agreement provides that any dispute between the parties "shall be exclusively and finally settled by arbitration in accordance with the Commercial Arbitration Rules of the [American Arbitration Association] then in effect." This arbitration provision expressly states: "*The award shall be final and binding on the Parties*. Judgment on the award may be entered by any court with competent jurisdiction." (Emphasis added.) The parties further agreed that "[t]he Federal Arbitration Act *** shall govern any arbitration conducted."

¶ 8                                    The Dispute
¶ 9      The Concession and Lease Agreement contained a noncompete provision by which CLP was entitled to compensation if the City authorized any new competition by allowing any new public parking facility to open in a defined area in the immediate vicinity of CLP's leased garages (competing parking action). Soon after the parties entered into the Concession and Lease Agreement, the City approved a site plan for a new building (the Aqua) developed by Magellan Development, which included a 1,273-space public parking garage. On May 1, 2009, after construction of the Aqua was substantially completed, the City issued a public garage license to Standard Parking Corporation, the garage operator for the Aqua. The garage was located approximately one block from the CLP garages and within the competing parking area. CLP observed a decline in the number of its parkers. It is undisputed that the City's action entitled CLP to compensation. On August 20, 2009, CLP submitted a claim to the City for compensation.

¶ 10                      Attempts at Informal Dispute Resolution
¶ 11     The City realized its mistake. On August 28, 2009, the City sent a letter to Standard Parking Corporation informing it that the Aqua's public garage license had been issued in error and was being rescinded. The City also offered to exchange the Aqua public garage license for an accessory garage license. Apparently, Magellan Development still owned the garage and chose to challenge the City's decision.
¶ 12     Standard Parking Corporation filed an administrative proceeding contesting the rescission of its license. In the administrative proceedings, the City took the position that if the license

was changed to an accessory garage license, only residents, tenants, and guests of the Aqua would be permitted to use the garage. On February 10, 2010, the City settled its dispute with Standard Parking Corporation by replacing its license with an accessory garage license.

¶ 13 Unfortunately, the new license did not cure the City's competing parking action. It is undisputed that the Aqua garage continued to accept parkers from the general public. After pursuing informal dispute resolution procedures mandated by the Concession and Lease Agreement, the City and CLP were unable to resolve the dispute.

## The Arbitration Proceedings

¶ 15 On March 1, 2011, CLP filed a statement of claim against the City with the American Arbitration Association, requesting "an amount to be determined at arbitration but in no event less than $200 million" to compensate it for past losses and losses projected over the balance of the 99-year lease period. CLP later reduced its demand but still sought over $137 million. The City's position was that the amount of damages was approximately $13 million including interest.

¶ 16 On March 23, 2011, the City filed its answering statement in the arbitration asserting that the new license issued to Standard Parking Corporation in February 2010 cured the competing parking action and CLP was not entitled to any compensation after that date. While the matter was pending in arbitration, there were contested discovery issues. Eventually, under the facts established in the case, the City admitted liability. The City conceded that both the original public parking garage license and the replacement accessory license granted to the Aqua constituted competing parking actions that entitled CLP to compensation. Although the City chose not to contest its liability, it disputed the amount of damages it owed CLP. Thus, CLP was required to prove its losses at an arbitration governed by the FAA.

¶ 17 A three-member arbitration panel heard evidence for seven days in October 2012. The parties submitted prehearing memoranda relating to issues involved in the evidentiary hearing, as well as posthearing memoranda. In addition to numerous fact witnesses, the arbitration panel heard testimony from CLP's expert witness and the City's three experts. The parties submitted nearly 1,000 exhibits. The hearing transcript constituted 1,784 pages. The arbitration panel heard closing arguments on November 20, 2012.

## The Arbitration Award

¶ 19 On January 14, 2013, the arbitration panel issued a unanimous 22-page award to CLP of nearly $58 million, which included approximately $7.3 million in prejudgment interest (the Arbitration Award). The City was not pleased with the Arbitration Award, but it was binding and final. No grounds existed under the FAA for vacating or modifying the Arbitration Award.[1]

¶ 20 In sum, the City found itself owing $58 million to CLP as the result of several choices made by the City, which can be summarized as follows: (1) agreeing to arbitrate any disputes under the Concession and Lease Agreement; (2) engaging in a competing parking action by

---

[1]The United States Supreme Court has explained that the enumerated grounds in sections 10 and 11 of the FAA provide the "exclusive" grounds for obtaining relief from an arbitration decision. *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578, 581 (2008). We need not list those grounds here because it is undisputed that none apply in this case.

issuing the original garage license to the Aqua; (3) engaging in a second competing parking action by issuing a replacement accessory garage license to the Aqua that still allowed public parking; and (4) proceeding to arbitration in the hope that the arbitration panel would find in favor of the City's position on the amount of damages.

¶ 21                                The Aqua Agreement

¶ 22     After the arbitration panel issued its Arbitration Award, which the City states was nearly two times more than what it would cost (or would have cost) the City to buy out the entire license it had issued to the Aqua's garage operator, the City made a deliberate and strategic choice. The City chose to enter into a contingent agreement to terminate the Aqua's license in an attempt to reduce the impact of the Arbitration Award on taxpayers. Had this "fifth" choice by the City been made prior to the arbitration proceedings, the outcome in this case may have been far different. Then, the arbitrators could have considered the impact of this agreement on the issue of future damages to CLP.

¶ 23     On May 17, 2013, after extended negotiations, the City entered into the contingent agreement with the owner of the Aqua entitled an "Agreement to Dispose of and Terminate Existing License and Grant New License" (the Aqua Agreement). Under the Aqua Agreement, the City would pay the owner of the Aqua between $23 million and $28.5 million, depending on certain developments and contingencies. In exchange, the Aqua would stop taking public parking within 30 days following the entry of an order by the circuit court of Cook County that grants the City at least $40 million in relief from the Arbitration Award. Thus, the Aqua Agreement would not go into effect unless and until a court reduces the City's liability to CLP by at least $40 million. The Aqua Agreement also provides that it is subject to the approval by the Aqua owner's members and the mortgagee, and is subject to the approval of the city council.

¶ 24                             The Trial Court Proceedings

¶ 25     On May 23, 2013, the City filed a "Verified Petition To Enter Judgment On Arbitration Award, To Stay The Judgment, And To Modify The Judgment" pursuant to sections 9 and 13 of the FAA (9 U.S.C. §§ 9, 13 (2000)) and sections 2-1203, 2-1305 and 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1203, 2-1305, 2-1401 (West 2012)). The City asserted that the "split-the-baby" Arbitration Award was "excessive" but conceded it had no basis to challenge the Arbitration Award under any of the statutory grounds available to it under the FAA. Instead, the City requested that the circuit court take three successive steps: first, confirm and enter judgment on the Arbitration Award; second, stay that judgment; and finally, vacate or modify the judgment "pursuant to 735 ILCS 5/2-1203 and/or 2-1401." As support for the final step, the City claimed that, as a result of the Aqua Agreement, CLP would incur no future harm from public parking at the Aqua, thus eliminating the future damages element of the Arbitration Award. The City argued that this fact justified the circuit court's exercise of its equitable powers to modify the judgment. The City argued that sections 2-1203 and 2-1401 of the Illinois Code of Civil Procedure were applicable pursuant to the plain language of section 13 of the FAA (9 U.S.C. § 13 (2000)) which provides that, "[t]he judgment so entered shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." Specifically, the City contended that the clause

- 5 -

"subject to all the provisions of law" means the judgment confirming the award is subject to postjudgment relief including vacatur or modification.

¶ 26    On June 21, 2013, CLP filed: (1) its own motion to confirm the award; and (2) a motion to dismiss the City's verified petition, pursuant to section 2-619.1 (735 ILCS 5/2-619.1 (West 2012)), which also served as an opposition to the City's petition to the extent it was construed as a motion to reconsider the judgment. CLP sought dismissal pursuant to section 2-615 (735 ILCS 5/2-615 (West 2012)), arguing that the City had failed to state a claim for relief from the Arbitration Award under the FAA (which provides the exclusive means to vacate or modify an arbitration award), or under Illinois law which precludes postjudgment relief based on facts that did not exist at the time the Arbitration Award was issued.[2]

¶ 27    On August 27, 2013, after full briefing, the court heard extensive argument.[3] The court granted CLP's motion to confirm the judgment and took its motion to dismiss the City's petition under advisement.

¶ 28    On September 13, 2013, the circuit court granted CLP's motion to dismiss. The court rejected the City's contention that sections 9 and 13 of the FAA allowed the court to enter judgment on an arbitration award and then vacate or modify that judgment where the arbitration award otherwise complies with the FAA and does not implicate any of the grounds for modifying or vacating an award as set forth in sections 9, 10, and 11 of the FAA. The court noted that "[t]he national policy embodied in the FAA, *chosen by the parties*, is finality." (Emphasis added.) As the court further concluded:

> "Accepting [the City's] interpretation of the particular language cited in section 13 would accomplish just what Congress intended the FAA to avoid. It would authorize a court, after the judgment on a concededly legal award, to reconsider it, thereby eviscerating sections 9, 10, and 11, and plunging the parties into further litigation. In the circumstances, herein, the situation would be even worse, because it would start litigation over newly created facts which the arbitrators never had the opportunity to consider."

¶ 29    The trial court also determined that, even if it had the authority to confirm the Arbitration Award and then modify it under section 2-1401, "any new evidence a court considers must relate to facts in existence at the time of the trial." The trial court stated that no cases have "allowed post-judgment relief based on circumstances or conditions arising after the judgment." The trial court concluded that "evidence of the post-arbitration [Aqua Agreement] is entirely new and does not relate to facts presented during those proceedings." The City now appeals.

---

[2]CLP also argued that the City's petition demonstrated the absence of due diligence, the City could not establish that the Aqua Agreement would have precluded entry of the arbitration award, and the City was not entitled to a stay. CLP further argued that, pursuant to section 2-619(a)(5) (735 ILCS 5/2-619(a)(5) (West 2012)), the City's petition "was not commenced within the time limited by law" because, under section 12 of the FAA, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12 (2000). The trial court did not base its ruling on these arguments.

[3]Prior to proceeding with argument, the trial court requested that the parties have a conversation regarding possible settlement. The court ordered a short recess after which the court heard the parties' arguments.

¶ 32    The City's petition sought to vacate or modify the judgment "pursuant to 735 ILCS 5/2-1203 and/or 2-1401." Section 2-1203 of the Code of Civil Procedure provides:

> "[A]ny party may, *within 30 days* after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modification of the judgment or to vacate the judgment or for other relief." (Emphasis added.) 735 ILCS 5/2-1203(a) (West 2012).

Section 2-1401 of the Code of Civil Procedure states, in relevant part:

> "(a) Relief from final orders and judgments, *after 30 days* from the entry thereof, may be had upon petition as provided in this Section. *** All relief heretofore obtainable and the grounds for such relief heretofore available, *** shall be available in every case, by proceedings hereunder, regardless of the nature of the order or judgment from which relief is sought or of the proceedings in which it was entered. Except as provided in Section 6 of the Illinois Parentage Act of 1984, there shall be no distinction between actions and other proceedings, statutory or otherwise, as to availability of relief, grounds for relief or the relief obtainable." (Emphasis added.) 735 ILCS 5/2-1401(a) (West 2012).

However, when the City filed its petition, no judgment had yet been entered.

¶ 33    Due to the unusual procedure employed by the City, *i.e.*, requesting modification of a "judgment" that had not yet been entered, this case does not fit precisely within the parameters of either section 2-1203 or 2-1401. Both sections apply to motions for postjudgment relief filed *after* the judgment has been entered. The problem here is that, unlike the typical postjudgment motion or petition, the City is not contending that the *judgment* should not have been entered in the first place. Instead, the City requested that the judgment be entered for the sole purpose of obtaining a new judgment modifying or vacating the award (which the court was prohibited from doing when first entering judgment).

¶ 34    "[T]he standard by which we should review the trial court's disposition of a section 2-1401 petition depends upon the manner in which it was disposed." *Mills v. McDuffa*, 393 Ill. App. 3d 940, 946 (2009) (citing *People v. Vincent*, 226 Ill. 2d 1, 15-17 (2007)). "[W]hen a court enters either a judgment on the pleadings or a dismissal in a section 2-1401 proceeding, that order will be reviewed, on appeal, *de novo*." *People v. Vincent*, 226 Ill. 2d 1, 18 (2007); accord *CitiMortgage, Inc. v. Sharlow*, 2014 IL App (3d) 130107, ¶ 14 ("appellate court applies a *de novo* standard of review in cases in which the trial court either dismissed a section 2-1401 petition or ruled on the petition based on the pleadings alone, without an evidentiary hearing").

¶ 35    In the instant case, the facts are not in dispute and the trial court dismissed the petition on purely legal grounds. We agree with the City that a *de novo* standard of review applies. Even applying the less deferential *de novo* standard of review to the matter before us, we conclude that the circuit court correctly denied the City's petition as a matter of law.

¶ 36                    The Parties Agreed to Arbitrate Their Disputes

¶ 37    Under the Concession and Lease Agreement, and as acknowledged by the City in its petition, the parties agreed to arbitrate their disputes. Thus, the City and CLP made a conscious decision to leave resolution of disputes to arbitration and to limit access to the courts to

themselves and each other.

## The Parties Agreed That the FAA Applied

The parties further agreed that the FAA would govern any arbitration. "The basic purpose of the FAA is to overcome the historical reluctance of courts to enforce agreements to arbitrate." *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 41 (2010) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995)); see also *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 384 (2004) (noting that the purpose was " 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts' " (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991))). The FAA created substantive federal law that applies to both state and federal courts. *QuickClick Loans, LLC v. Russell*, 407 Ill. App. 3d 46, 52 (2011); *Ford Motor Credit Co. v. Cornfield*, 395 Ill. App. 3d 896, 905 (2009).

## Public Policy Favors Arbitration

"It is well established that agreements to submit to arbitration, as an alternative method of dispute resolution, are favored at both the state and federal level." *QuickClick Loans*, 407 Ill. App. 3d at 52 (citing *Board of Managers of the Courtyards at the Woodlands Condominium Ass'n v. IKO Chicago, Inc.*, 183 Ill. 2d 66, 71 (1998)). Illinois public policy favors arbitration as a means of resolving disputes. *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 59 (2011); *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 49 (2010); see also *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1004 (N.D. Ill. 2013), *aff'd*, 556 F. App'x 543 (7th Cir. 2014) ("The Illinois General Assembly clearly shares with Congress the same favorable view of arbitration agreements and their enforcement, as evidenced by its enactment of the Illinois Uniform Arbitration Act ***.").

It follows that "[a]rbitration awards should be construed, wherever possible, so as to uphold their validity." *Tim Huey Corp. v. Global Boiler & Mechanical, Inc.*, 272 Ill. App. 3d 100, 106 (1995). "Such deference is accorded because the parties have chosen in their contract how their dispute is to be decided, and judicial modification of an arbitrator's decision deprives the parties of that choice." *Id.* The City does not claim that the Arbitration Award itself should be vacated or modified and concedes no grounds exist for doing so. The City admits it could not challenge the entry of the judgment confirming the Arbitration Award. Instead, relying on section 13 of the FAA, the City seeks to vacate or modify the *judgment* itself.

## Section 13 of the FAA

Section 13 of the FAA provides, in relevant part, that the judgment entered on the arbitration award "shall be docketed as if it was rendered in an action." 9 U.S.C. § 13 (2000). It also provides that the judgment "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action." *Id.* Finally, section 13 states that the judgment "may be enforced as if it had been rendered in an action in the court in which it is entered." *Id.* Thus, section 13 gives the judgment the same force and effect as any other judgment.

¶ 45       The City argues that "CLP's insinuation that enforcement is section 13's *sole* purpose is unsupportable." (Emphasis in original.) According to the City, section 13 treats a judgment confirming an arbitration award just like any other federal civil judgment. Therefore, the City contends, the "plain language" stating that the judgment shall "be subject to all the provisions of law relating to[ ] a judgment in an action" means it is subject to state postjudgment relief statutes such as sections 2-1203 and 2-1401. Thus, the City argues that, following entry of a judgment confirming an otherwise valid final arbitration award, that judgment itself may be vacated or modified by a court to change the arbitration award that the court would have been powerless to alter before confirming the award. This position strains credulity.

¶ 46       Section 13 has been described as an enforcement provision. *Employers Insurance Co. of Wausau v. OneBeacon American Insurance Co*., 744 F.3d 25, 28-29 (1st Cir. 2014). As the *Employers Insurance Co. of Wausau* court explained, one of the purposes of the court's review of an arbitration decision is to provide "a mechanism for enforcement." *Id*. Also, as recognized by the Second Circuit, "[o]nce confirmed, [arbitration] awards become enforceable court orders, and, when asked to enforce such orders, a court is entitled to require actions to achieve compliance with them." *Zeiler v. Deitsch*, 500 F.3d 157, 170 (2d Cir. 2007). Although these cases did not involve the postjudgment relief argument at issue here, we believe section 13 embodies *enforcement* principles. Section 13 provides courts with the explicit authority to enforce a judgment confirming an arbitration award in the same manner as it would enforce any other judgment.

¶ 47       In *Chiron Corp. v. Ortho Diagnostic Systems, Inc*., 207 F.3d 1126, 1133 (9th Cir. 2000), the court addressed *res judicata* concerns but stated: "[W]hile a judgment entered upon a confirmed arbitration award has the same force and effect under the FAA as a court judgment for enforcement purposes, it is not wholly parallel to a court judgment for all purposes." As the court further explained:

> "[T]here are fundamental differences between confirmed arbitration awards and judgments arising from a judicial proceeding. Absent an objection on one of the narrow grounds set forth in section[ ] 10 or 11, the [FAA] requires the court to enter judgment upon a confirmed arbitration award, without reviewing either the merits of the award or the legal basis upon which it was reached. A judgment upon a decision or order rendered by the court at the conclusion of a judicial proceeding, by contrast, confirms the merits of that decision. Along the same lines, a judgment under § 13 of the FAA is not subject to [federal rules providing postjudgment relief] whereas a judgment arising from a judicial proceeding is subject to reopening and challenge under those rules. And, unless the provisions of the parties' agreement provides to the contrary, there is no right under the FAA to appeal the merits of a confirmed arbitration award. In sum, a judgment upon a confirmed arbitration award is qualitatively different from a judgment in a court proceeding, even though the judgment is recognized under the FAA for enforcement purposes." *Id*. at 1133-34.

¶ 48       Under the City's interpretation, section 13 would permit a broader challenge to an award *after* it has been converted to a judgment than would have been allowed under sections 10 and 11 *prior* to the conversion of the award into a judgment. We agree with CLP that section 13 does not exist to *inhibit* the enforcement of arbitration awards. The City cannot use section 13 to obtain postjudgment relief from an uncontested judgment confirming an arbitration award

based on events that occurred after the final arbitration award.

¶ 49                    The Illinois Postjudgment Relief Statutes

¶ 50    Even if we were to assume *arguendo* that the language of section 13 stating that a court judgment affirming an arbitration award is "subject to all the provisions of law relating to, a judgment in an action" is interpreted to mean the judgment is subject to the Illinois postjudgment relief statutes, *i.e.*, section 2-1203 and/or section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1203, 2-1401 (West 2012)), the City's petition fails because there is nothing wrong with the August 27, 2013 judgment itself.

¶ 51    "The intended purpose of a motion to reconsider [under section 2-1203] is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law." (Internal quotation marks omitted.) *Cable America, Inc. v. Pace Electronics, Inc.*, 396 Ill. App. 3d 15, 24 (2009). "Relief under section 2-1401 is predicated upon proof, by a preponderance of evidence, of a defense or claim *that would have precluded entry of the judgment* in the original action and diligence in both discovering the defense or claim and presenting the petition." (Emphasis added.) *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007); see also *People v. Haynes*, 192 Ill. 2d 437, 463 (2000) ("[T]he purpose of a section 2-1401 petition is to bring facts to the attention of the circuit court which, if known at the time of judgment, would have precluded its entry."). Thus, the proper inquiry is whether knowledge of the Aqua Agreement would have precluded entry of the August 27, 2013 judgment. The Aqua Agreement could not have changed the *court's* judgment (confirming the award) because, in fact, it *did not* change the judgment. It was revealed to the court by the City before the judgment, and the City urged the court to confirm the judgment following disclosure of the Aqua Agreement.

¶ 52    "Actions to confirm arbitration awards *** are straightforward proceedings in which no other claims are to be adjudicated." (Internal quotation marks omitted.) *Asset Acceptance, LLC v. Tyler*, 2012 IL App (1st) 093559, ¶ 25. "[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." (Internal quotation marks omitted.) *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987). The circuit court had no authority to not enter a judgment confirming the award. The only decision before a court when deciding whether to enter judgment confirming an arbitration award is whether there is any basis to vacate, modify or correct that award under section 10 or 11 of the FAA and, if not, the court "must" enter the judgment. See 9 U.S.C § 9 (2000).[4] More importantly, both parties requested the original judgment, *i.e.*, confirmation of the Arbitration Award. The City could have opposed confirmation but chose not to, obviously because there were absolutely no valid grounds to oppose its entry. As CLP notes, "[t]he City does not seek relief from the Circuit Court's decision to confirm the award; the City *requested* that ruling and acknowledges that the court was bound to enter it under the FAA." (Emphasis in original.)

¶ 53    Although styled as a "post-judgment" motion, it is clear that the "apparent intent" of the City is to vacate or modify the Arbitration Award. The judgment is merely the vehicle it is

_____

[4]Section 9 of the FAA states, in pertinent part, that "any party to the arbitration may apply to the court *** for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11." 9 U.S.C. § 9 (2000).

- 10 -

using to accomplish that true purpose. On appeal, the City has not attacked the circuit court proceedings that led to the judgment confirming the Arbitration Award.

¶ 54 The City cites several federal cases that stand for the proposition that Federal Rule of Civil Procedure 60(b)[5] is an appropriate vehicle by which to challenge a judgment confirming an arbitration award. The federal rules addressing postjudgment relief, Rules 59(b) and 60(b)(2) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 59(b), 60(b)(2)), have been described as "the functional equivalents of our section 2-1203 and section 2-1401 of the Code [of Civil Procedure] [citation], respectively." *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 410 (2005). The cases cited by the City are inapposite and we do not find them persuasive. In *Fidelity Federal Bank, FSB v. Durga Ma Corp*., 387 F.3d 1021, 1024 (9th Cir. 2004), the court held that the district court had acted within its discretion in *correcting* a mistake involving the postjudgment interest rate on a confirmed arbitration award. In *Clarendon National Insurance Co. v. TIG Reinsurance Co.*, 990 F. Supp. 304, 311 (S.D.N.Y. 1998), the court did not change the arbitration's resolution of the dispute but merely modified the court's prior judgment to make it *consistent* with the *arbitrators'* revised award in which they had explicitly acknowledged a mathematical error. In *Baltia Air Lines, Inc. v. Transaction Management, Inc.*, 98 F.3d 640, 642 (D.C. Cir. 1996), the party that had lost in arbitration sought relief from the judgment confirming the award, alleging fraud during the arbitration proceedings, *as well as* fraud during the confirmation proceedings before the court.[6]

¶ 55 The City also relies on the case of *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc*., 579 F.3d 1268 (11th Cir. 2009) (*AIG Baker II*) as a "particularly good illustration" of the City's entitlement to postjudgment relief. We do not believe that the situation in *AIG Baker II* is analogous to the one in the instant case. *AIG Baker II* involved the second time the parties were before the Eleventh Circuit. The previous appeal was *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc*., 508 F.3d 995 (11th Cir. 2007) (*AIG Baker I*). Those appeals did not involve facts created after an arbitration hearing. Instead, the appeals involved a unique situation whereby the court in *AIG Baker II*, with a strong dissent, essentially condoned a procedure that was clearly an attack on the underlying arbitration award

---

[5]Federal Rule 60(b) states: "Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b).

[6]The *Baltia Air Lines* court stated that "Rule 60(b) is an appropriate vehicle by which to challenge a judgment confirming an arbitration award ***." *Baltia Air Lines*, 98 F.3d at 642. However, this conclusory statement was considered by the court in *Halliburton Energy Services, Inc. v. NL Industries*, 618 F. Supp. 2d 614 (S.D. Tex. 2009). As the *Halliburton* court observed, the motion in *Baltia Air Lines* was time-barred and had been dismissed by the district court. *Id*. at 631. The dismissal was affirmed. *Id*. Thus, the *Halliburton* court concluded "[t]he offhand comment in *Baltia Air Lines* does not expand or circumvent the specific procedures set out in the FAA to challenge an arbitration award." *Id*.

under the guise of a motion to set aside the judgment confirming the award, in order to prevent one party from receiving a windfall as a result of the double payment by the other party.

¶ 56 Both *AIG Baker I* and *AIG Baker II* concerned a tax dispute between a mall tenant and a landlord. After an arbitration panel had issued an award in favor of the landlord, the tenant discovered that it had already paid some of the disputed taxes directly to the taxing authority. *AIG Baker II*, 579 F.3d at 1270. Therefore, the enforcement of the arbitration award would result in a double payment by the tenant and a windfall for the landlord. However, the tenant had not presented this information to the arbitration panel at the time of arbitration. *Id*. The tenant first tried to modify the arbitration award to avoid paying the landlord the money that the tenant had already paid to the government. *Id*. The district court granted the modification of the award, but the landlord appealed, and the Eleventh Circuit reversed.

¶ 57 The *AIG Baker I* court acknowledged that the arbitration panel lacked knowledge of the tenant's payment to the taxing authority and that the arbitration award that the landlord received might have been a product of ignorance attributable to the tenant's oversight. *AIG Baker I*, 508 F.3d at 999. Nonetheless, the court concluded that section 11(a) of the FAA, which allows a court to modify or correct an award for mistakes, was not applicable because the arbitration panel itself did not make a mistake. *Id*.

¶ 58 "On remand, the district court held a status conference." *AIG Baker II*, 579 F.3d at 1270. "The district court informed the parties that it wanted to credit [the tenant] for the actual payment to the taxing authority and asked the parties to brief how the district court could legitimately accomplish that goal." *Id*. The tenant "suggested that the district court take two steps: first, enter a judgment confirming the arbitration award; and, second, grant [the tenant] relief from the judgment under Rule 60(b)(5) on the ground that the earlier tax payment had satisfied some of the judgment." *Id*. The district court adopted the approach suggested by the tenant, entered a judgment confirming the arbitration award, and then granted relief from the "judgment" under Federal Rule 60(b)(5) to the extent of the taxes already paid. *Id*.

¶ 59 The landlord appealed again, but this time the Eleventh Circuit affirmed in *AIG Baker II*. The *AIG Baker II* court turned its attention to section 13 of the FAA. *Id*. at 1272. The court concluded that a judgment which has confirmed an arbitration award is to be treated no better or worse than any other civil judgment. *Id*. at 1273. The district court had stated that its decision avoided the landlord's " 'knowing receipt of a quarter-of-a-million dollar windfall.' " *Id*. Thus, the *AIG Baker II* court decided that it could not say that "the district court abused its discretion by granting [the tenant] some relief from the judgment under Rule 60(b)(5)." *Id*. at 1274.

¶ 60 Although the City characterizes the Arbitration Award as a "windfall" for CLP, CLP notes that the Arbitration Award represents "the reasoned findings of three qualified, neutral arbitrators based on substantial evidence as to damages that will occur over a 90+ year period." CLP asserts that it is entitled to the remedy that it bargained for and obtained after years of costly litigation: a binding arbitration award, and the money and finality it affords. Merely because the arbitrators rejected the City's position as to the measure of damages does not mean the award was excessive or that CLP received a "windfall." Nor does the instant case involve a double recovery, obviously the concern in *AIG Baker II*. As CLP also notes, the City has not paid any money to CLP and does not argue that a portion of the judgment has been satisfied. Rather, the City's argument is that the "new evidence" of the conditional Aqua Agreement makes the arbitration decision inequitable.

¶ 61     We recognize that *AIG Baker II* supports the basic proposition that the City advances–that a court can grant postjudgment relief from its own judgment confirming an otherwise valid arbitration award. However, it must be noted that there was a dissent in *AIG Baker II* from that part of the decision affirming the district court's application of Rule 60(b)(5) to amend the judgment confirming the arbitration award. *AIG Baker II*, 579 F.3d at 1275-79 (Kravitch, J., concurring in part and dissenting in part). According to the dissent, the FAA "does not allow modification of arbitration awards in the manner used by the district court." *Id*. at 1275. As the dissent explained:

> "The majority holds that Rule 60(b)(5) may be used to modify a judgment confirming an arbitration award even though the same arbitration award may not be modified under the FAA. Although the Federal Rules apply to court proceedings involving arbitration awards, [citation], they apply 'only to the extent that matters of procedure are not provided for in those statutes.' [Citation.] Because the FAA provides for methods to correct an arbitration award [citation], the Federal Rules should not be read to provide alternative ways to modify arbitration awards. Furthermore, *Rule 60(b) should not be used to circumvent other requirements of the law*. [Citation.] *It is obvious from the procedural history in this case that Rule 60(b) was used as an end run around the FAA after §§ 10 and 11 were found to be inapplicable*. The district court unsuccessfully attempted to modify the award under the FAA, sought advice from the litigants about how to get around the frustration of that attempt, and then relied on Rule 60(b) to do exactly what it had been told was impossible under the FAA. The FAA prevents courts from using Rule 60(b) in this manner to avoid the strict limitations on judicial review set forth in the FAA. [Citations.]" (Emphases added.) *Id*. at 1276.

¶ 62     As the dissent in *AIG Baker II* noted, postjudgment relief cannot be granted by amendment of the judgment if the court could not have properly granted that relief in the original judgment. *Id*. at 1277-78. The dissent also relied on the Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc*., 552 U.S. 576 (2008), noting its emphasis on "the narrow nature of the judicial review permitted under the FAA." *AIG Baker II*, 579 F.3d at 1276 (Kravitch, J., concurring in part and dissenting in part). The *Hall Street* Court held that sections 10 and 11 of the FAA "provide the FAA's exclusive grounds for expedited vacatur and modification" of arbitration awards. *Hall Street*, 552 U.S. at 584. In the instant case, the trial court also relied on *Hall Street* in considering the City's interpretation of section 13. As the *Hall Street* Court explained:

> "Instead of fighting the text, it makes more sense to see the three provisions, §§ 9-11, as substantiating a national policy favoring arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway. Any other reading opens the door to the full-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process, [citations], and bring arbitration theory to grief in postarbitration process." (Internal quotation marks omitted.) *Id*. at 588.

We believe the principles enunciated in *Hall Street* regarding the limited judicial review permitted under the FAA, as noted by the dissent in *AIG Baker II* and the circuit court here, are relevant to the proper interpretation of section 13. Applying the "plain" language of section 13, without construing it together with the entire FAA, appears to lead to an absurd result: a party can expand upon the grounds in the act for vacating or modifying an otherwise legally proper

final arbitration award. As a result, the losing party would obtain more rights after an arbitration award is "confirmed" under the FAA than the party had before the award was confirmed. A party cannot indirectly attack an arbitration award "under the guise of a motion to set aside the judgment confirming the award." *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp.*, 791 F.2d 1334, 1339 (9th Cir. 1986).

¶ 63    It appears that the majority of courts have decided that litigants cannot circumvent sections 10 and 11 of the FAA through the use of a "post-judgment" motion. In applying postjudgment relief statutes to court orders confirming arbitration awards, courts have addressed the distinction between an attack on the *court* proceedings producing the judgment and an attack on the arbitration proceedings and/or the arbitration award.

¶ 64    In *Halliburton Energy Services, Inc. v. NL Industries*, 618 F. Supp. 2d 614 (S.D. Tex. 2009), the court noted that the party challenging the court's judgment had not shown any justification for using Federal Rule 60(b) to overturn a judgment confirming an arbitration award on grounds that could not have been used to vacate the award in the first place. *Id*. at 635. As the court noted:

> "[The appellant] *has not attacked the district court proceedings*. [The appellant's] focus is on alleged misconduct at the arbitration proceedings. Yet [the appellant] asks this court to view the Confirmation Order and Partial Final Judgment as subject to a separate review process from the arbitration awards themselves, compounding the anomalous nature of the approach it proposes. The authority [the appellant] relies on to support its proposed procedure is neither on point nor persuasive. [The appellant] does not take into account authority that a court cannot use Rule 60(b) to expand the FAA's grounds for vacatur." (Emphasis added.) *Id*.

*Halliburton* stands for the proposition that Federal Rule 60(b) cannot be used to circumvent or expand the FAA's limits on judicial review of an arbitration award. See *id*. at 635-36 (and cases cited therein).

¶ 65    One of the cases relied on by the *Halliburton* court was *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 442 F.2d 1234, 1235-36 (D.C. Cir. 1971), in which the appellant sought unsuccessfully to vacate an order confirming an arbitrator's award pursuant to Federal Rule 60(b)(6) based on " 'newly available evidence' " from a witness who refused to testify at the arbitration. The *Washington-Baltimore* court acknowledged that "[b]ecause subpoenas are not available in private arbitration proceedings, [the] appellant was unable to compel [the witness's] attendance and testimony." *Id.* at 1238. "Nevertheless, it was the [appellant's] bargain with the [appellee] to have [the subject] disputes *** settled by arbitration, with all of its well known advantages and drawbacks." *Id*. As the court explained:

> "To give appellant a rematch before the arbitrator, merely because a witness who refused to enter the original contest has now decided to participate, would be not only to give the [appellant] more than the benefit of its bargain in this case, but would undercut the finality and therefore the entire usefulness of arbitration as an expeditious and generally fair method of settling disputes." *Id*.

Although the *Washington-Baltimore* court did not address section 13, the court concluded that "neither Rule 60(b) nor any judicially constructed parallel thereto was meant to be applied to final arbitration awards." *Id.* at 1239.

¶ 66 In *Congressional Securities, Inc. v. Fiserv Securities, Inc.*, Nos. 02 Civ. 3740(RJH), 02 Civ. 7914(RJH), 02 Civ. 6593(RJH), 02 Civ. 8364(RJH), 2004 WL 829028 (S.D.N.Y. Apr. 15, 2004), the court considered a motion to set aside a previous judgment confirming an arbitration award based on newly discovered evidence. The court cited section 13 of the FAA and also accepted the proposition that "Rule 60(b) may be used to modify a judgment confirming an arbitration award." *Id*. at *2. Nonetheless, the court denied the Rule 60(b) motion to set aside the judgment confirming the arbitration award. The court denied the motion for two reasons. *Id*. First, the court noted that "the alleged exculpatory evidence [did] not indicate any fault with [the district judge's] order confirming the arbitration award." *Id*. As to the second reason, the court stated that "neither Rule 60(b) nor any other rule involving 'newly discovered evidence' is available to vacate an arbitration award," which the court noted was the "apparent intent" of the motion. *Id*.

¶ 67 In *Lafarge Conseils Et Etudes, S.A. v. Kaiser Cement & Gypsum Corp*., 791 F.2d 1334, 1338 (9th Cir. 1986), the appellant sought, under Federal Rule 60(b), to set aside the judgment confirming an arbitration award. *Id*. The appellant contended that "fraud in the arbitration proceedings tainted the award *and judgment*." (Emphasis added.) *Id*. at 1335. However, as the court explained:

> "Under Rule 60(b)(3), the moving party must establish by clear and convincing evidence that *a judgment* was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case. [Citations.] [The appellant] failed to identify any fraud, misrepresentation or misconduct *in the court proceedings*. Fraud alleged in the arbitration does not render *the judgment* fraudulently obtained." (Emphases added.) *Id*. at 1338.

¶ 68 In *Sportsman's Quikstop I, Ltd. v. Didonato*, 32 P.3d 633, 635 (Colo. App. 2001), the court accepted that its postjudgment relief statute was "available to attack a judgment confirming an arbitration award." However, as the court further noted, the attack had to be "on grounds of a defect inherent in the judgment itself or the means by which it was obtained." *Id*. In other words, there must be a problem with the court's judgment or "the court proceedings." The court gave an example of when it might be appropriate to seek to vacate a judgment confirming an arbitration award: "for example, the movant had not received notice of a motion seeking to confirm the arbitration award." *Id*. However, the party in *Sportsman's Quikstop I, Ltd.*, similar to the City here, was not using the postjudgment relief statute to attack "a defect inherent in the judgment itself or the means by which it was obtained." *Id*.

¶ 69 The distinction between the arbitration and the "court" proceedings in entering judgment is relevant. In setting aside, vacating, or modifying a *judgment*, the focus is on the court proceedings leading to the *judgment*. Here, there is no error or defect in the judgment confirming the award or the means by which it was obtained, *i.e.*, in the court proceedings. The judgment was requested by both parties and the court was required to enter it pursuant to the FAA. Clearly, the City's petition aimed to vacate or modify the Arbitration Award, under the guise of a postjudgment motion. The City's position that the so-called "excessive" and "split-the baby" Arbitration Award now constitutes a "windfall" in view of the subsequent Aqua Agreement is an attack on the Arbitration Award itself and not on the court's judgment, which the City itself had sought.

¶ 70    We recognize that the circuit court's second basis for dismissing the City's petition was different. The court reasoned that, even if it had the authority under the FAA to reconsider its judgment confirming a concededly legal arbitration award, it could not grant postjudgment relief based on circumstances or conditions arising after the arbitration proceedings ended. Although most of the case law supports the proposition that, for purposes of obtaining postjudgment relief based on new evidence, the evidence must have existed at the time of judgment, this court has also acknowledged that "there is a split of authority within this court as to whether such evidence [arising after judgment] may be considered." *People v. Howard*, 363 Ill. App. 3d 741, 746 (2006). We need not address this debate because, as we have explained, with respect to the judgment at issue here, there was no newly discovered evidence after the court proceedings took place on August 27, 2013. Whether the evidence existed prior to, or subsequent to, the arbitration proceedings or the final arbitration award is not pertinent to this analysis. *If* the Aqua Agreement had been in existence during the arbitration and presented to the arbitrators, and if the arbitrators were not troubled by the contingent nature of the agreement, it *may* have affected the amount of the Arbitration Award. The Aqua Agreement could not, and did not, impact the circuit court's decision to confirm the award.

¶ 71    We hold that the City was not entitled to postjudgment relief in the circuit court based on the existence of the Aqua Agreement created after the Arbitration Award. The court was aware of this new contingent agreement with a third party and it would not have changed and, in fact, did not change the circuit court's original judgment confirming the award. Therefore, the judgment does not need be modified or vacated for any reason.

¶ 72                                    General Equitable Principles

¶ 73    The City contends that the circuit court erred in dismissing its petition based on its failure to exercise the broad authority it has under the postjudgment relief statutes to remedy any error to do justice. "One of the guiding principles in the administration of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court to prevent enforcement of a judgment when doing so would be unfair, unjust, or unconscionable." *People v. Lawton*, 212 Ill. 2d 285, 297 (2004). The City cites *Lawton* and relies on general "equitable" principles, noting that "significant public funds are at stake in this case." The circuit court thoroughly considered *Lawton* and found it was "not apt." We agree.

¶ 74    The defendant in *Lawton* sought postjudgment relief on the basis of ineffective assistance of counsel in connection with his civil commitment. *Id*. at 287, 298. Section 2-1401 was being invoked to protect "federal constitutional rights." *Id*. at 301. As the *Lawton* court explained: "If this were a conventional civil case in which a litigant sought to collaterally attack a judgment on the grounds that his lawyer was negligent, there would be no question that relief would not lie under section 2-1401." *Id*. at 299-300. CLP notes that, unlike *Lawton*, this case does not implicate "federal constitutional rights" and is a "conventional civil case" for money damages. Special rules do not apply to the City simply because its actions have significant consequences for taxpayers. See *Flisk v. Central Area Park District*, 203 Ill. App. 3d 253, 257 (1990) (where the court rejected a section 2-1401 claim for relief despite the defendants' assertion that to " 'allow a potentially large and unwarranted judgment amount to be lodged against the Park District and to subject the taxpayers of Maywood to damage and a squanderance of their tax dollars would be inequitable' ").

¶ 75      We realize the effect the Arbitration Award will have on blameless taxpayers and regret the impact that the City's mistakes caused. However, the City and CLP agreed to arbitrate any disputes arising out of the Concession and Lease Agreement, which strictly limits the court's power to address the merits of this matter. The City also chose to gamble that it would succeed at arbitration and lost that gamble. That the procedures chosen by the City created this unfortunate result does not mean it was an unfair result. There is nothing "fair" about reversing the outcome of a years-long arbitration process selected by the parties because one party does not like the result, even where significant public funds are at stake.

¶ 76      Even if the courts were empowered to reconsider the impact of the Aqua Agreement on the Arbitration Award, under the facts of this case it would be based on pure speculation. Although the City asserts that "about $54 million" of the arbitration panel's award was for future damages, the award itself does *not* distinguish between past and future damages.[7] Thus, the circuit court would have no basis for determining what impact, if any, the Aqua Agreement would have had on the arbitration panel's decision. CLP asserts that "the impact, if any, of the Aqua Agreement on CLP's claim for future damages would have been the subject of extensive discovery and cross examination by CLP during the arbitration proceedings had it been raised there." CLP argues that "any attempt to assess what the arbitration panel would have decided had it been presented with the Aqua Agreement would be pure speculation." We agree.

¶ 77      CLP also outlines the uncertainties regarding the future impact of the Aqua Agreement, including the facts that it contains no enforcement mechanisms, *continues to allow the Aqua to accept public parkers*, and can be modified at any time by the City, and the City suggested in the proceedings before the trial court that these uncertainties could be addressed by more litigation. CLP argues that this "serial litigation" is the precise opposite of that contemplated by Illinois law and the Concession and Lease Agreement. The Concession and Lease Agreement provides that losses "that will occur in the future shall be payable at the time" the competing parking action occurs, in a final determination by arbitrators. CLP contends that the Concession and Lease Agreement does not contemplate that the losses be "continually revisited over the remainder of the 99-year term each time the City decides to change tactics."

¶ 78      Arbitration awards are meant to be final, with limited review. The circuit court correctly ruled that arbitration awards are not meant to be a starting point, "plunging the parties into further litigation." Thus, irrespective of the unfortunate impact upon taxpayers, the equities do not support the City's position.

¶ 79                                     CONCLUSION

¶ 80      Arbitration is a choice, not something compelled. With the perceived benefits of reduced costs, relaxed evidentiary rules and procedures, and finality, this contractual agreement strictly limits a party's recourse after an arbitration award is entered with which the party disagrees. It was undisputed that no grounds existed to vacate or modify the final and binding arbitration award. There was no error in the court's *judgment* confirming that award that needed a remedy. The City was not entitled to postjudgment relief in the circuit court where the court was aware

---

[7]Although the record shows that the parties obtained a clarification of award from the arbitration panel regarding certain components of the award, including calculation of interest, there is no record of any request that the award be clarified with respect to the allocation of the award as to past and future damages.

of the newly created facts and these facts would not have changed and, in fact, did not change the circuit court's judgment confirming the award. Section 13 of the FAA says nothing about applying state law provisions for postjudgment relief to peer through the court's judgment confirming the award to the validity or equity of the underlying award entered by the arbitrators. The procedure proposed by the City clearly contemplates a roundabout way of vacating or modifying an arbitration award that is not otherwise found in the FAA (*i.e.*, an "end run" around sections 10 and 11). Equity does not require a court to ignore the parties' agreement to arbitrate their disputes and allow the losing party a "do-over" based on new evidence it created after the arbitration ended, particularly where, as here, the new evidence consists of a contingent contract, with a third party, containing several uncertainties.

¶ 81    The City failed to state a claim for postjudgment relief under section 13 of the FAA or the Illinois postjudgment statutes. The circuit court correctly dismissed the City's petition requesting the court to follow the procedure of first entering a judgment confirming an arbitration award and subsequently modifying or vacating that court judgment, as a means of avoiding the final, binding and otherwise valid arbitration award.

¶ 82    For the foregoing reasons, we affirm the decision of the circuit court of Cook County dismissing the City's petition.

¶ 83    Affirmed.